IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2009 Session

DOJI, INC. D/B/A DEMOS' STEAK AND SPAGHETTI HOUSE v. JAMES
G. NEELEY, COMMISSIONER, TENNESSEE DEPARTMENT OF LABOR
& WORKFORCE DEVELOPMENT EMPLOYMENT SECURITY
DIVISION AND ANDREA T. RUFFIN

Appeal from the Chancery Court for Rutherford County
No. 08-1353-MI     Robert E. Corlew, III, Chancellor

No. M2009-00822-COA-R3-CV - Filed December 30, 2009

A fired employee filed for unemployment benefits. The former employer opposed the benefits, maintaining that the employee was fired for misconduct. The Department of Labor and Workforce Development initially found for the employer and the employee appealed. After a hearing, the Appeals Tribunal found for the employee. The employer appealed. The Board of Review affirmed the Appeals Tribunal's decision. The employer appealed to the chancery court, which vacated the administrative decision due to evidentiary issues and remanded the matter. On remand, the Board of Review considered the evidence in question and reaffirmed its earlier decision. The employer appealed to the chancery court, which affirmed the Board of Review. The employer appealed again. We affirm the chancery court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Benjamin Henry Bodzy and M. Kim Vance, Nashville, Tennessee, for the appellant, Doji, Inc. d/b/a Demos' Steak and Spaghetti House.

Andrea T. Ruffin, Nashville, Tennessee, Pro Se; Lindsey Owusu Appiah and Angela Spinella Bonovich, Nashville, Tennessee, for the appellee, James G. Neeley.

Anne C. Martin, Nashville, Tennessee, for the Amicus Curiae, National Federation of Independent Business Small Business Legal Center.

## OPINION

### BACKGROUND

On May 4, 2007, Andrea Ruffin was fired from her job as a server for DOJI, Inc., which does business as Demos' Steak House ("Demos'"). She seeks unemployment benefits and is opposed by Demos', who claims she was fired for misconduct and, therefore, should not receive unemployment benefits.

Ruffin worked for Demos' for almost two years. She achieved a Level 5 server status, the highest ranking a server could achieve. However, Demos' received several customer complaints about Ruffin's service. John Ramm, the area supervisor, testified that she was discharged for excessive customer complaints. He said that the complaints varied, "but mostly would translate into neglect. Forgetting something, ignoring requests, not delivering things in the proper order."[1] Ruffin was suspended for one week for poor service. After she returned, Demos' received another customer complaint about her serving. This complaint was "the last straw," according to Ramm, and Ruffin was fired.

Ruffin filed a claim for unemployment benefits and Demos' opposed it. The Department of Labor and Workforce Development ("Department") agreed with Demos' and initially found that Ruffin was fired for misconduct. Ruffin appealed, and the Appeals Tribunal held a telephone hearing on June 8, 2007. On June 11, 2007, the Appeals Tribunal ruled that Ruffin should receive unemployment benefits because Demos' did not prove misconduct. Demos' appealed to the Board of Review, which affirmed the Appeals Tribunal. Demos' filed a petition for review with the chancery court. The court found that the Board of Review and the Appeals Tribunal did not consider the customer comment cards because they were hearsay. Since the chancery court determined that the cards should have been considered, the court vacated the administrative decision and remanded the matter to the Board of Review for reconsideration. The Board reconsidered and still affirmed the Appeals Tribunal, maintaining that the comment cards were unreliable and noting that the claimant denied the conduct and her supervisor did not remember it. Demos' appealed to the chancery court again, which affirmed the decision of the Board of Review. Demos' now appeals to this court.

### STANDARD OF REVIEW

The standard of review employed by appellate courts in unemployment compensation cases is the same as the one employed by the trial courts. *DePriest v. Puett*, 669 S.W.2d 669, 673 (Tenn. Ct. App. 1984). Unlike other civil appeals governed by Tenn. R. App. P. 13(d), there is no presumption of correctness in these cases. *Wallace v. Sullivan*, 561 S.W.2d 452, 453 (Tenn. 1978). The court may reverse, remand, or modify the administrative decision if it is:

---

[1] Demos' has a Twelve Step Procedure servers must follow.

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-7-304(i)(2). For purposes of (E), substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Sweet v. State Technical Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)).

ANALYSIS

Ruffin was fired for providing poor service to Demos' customers. The first issue we must address is whether providing poor service to Demos' customers is misconduct. An unemployment benefits claimant who is discharged due to misconduct connected with the claimant's work is disqualified from receiving benefits. Tenn. Code Ann. § 50-7-303(a)(2)(A). There was no definition of misconduct in the unemployment compensation statutes at the time Ruffin was fired.[2] The Tennessee Supreme Court has stated: "[I]n order to establish a disqualification there must be shown a material breach of some duty which the employee owes to the employer." *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988). Case law further indicates that "misconduct" includes:

> conduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

---

[2] A definition of "misconduct" has been added to the unemployment compensation statutes, effective January 1, 2010, by Chapter 479 of the 2009 Public Acts of Tennessee.

*Armstrong v. Neel*, 725 S.W.2d 953, 956 (Tenn. Ct. App. 1986) (citing *Boynton Cab Co. v. Neubeck*, 296 N.W. 636, 640 (Wis. 1941)).

For this court to uphold "the Board of Review's application of the provisions of the statute, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in a judicial proceeding." *Sabastian v. Bible*, 649 S.W.2d 593, 594 (Tenn. Ct. App. 1983). Our reviewing function is limited. "All that is needed to support the commission's interpretation is that it has warrant in the record and a reasonable basis in law." *Id*. at 594-95 (citing *Cawthron v. Scott*, 400 S.W.2d 240, 242 (Tenn. 1966)). After a review of the record, we are convinced that the sporadically poor quality of service provided by Ruffin to Demos' customers is not the sort of deliberate violation of an employer's policies that constitutes misconduct within the meaning of the unemployment statutes.

Next Demos' argues that the Appeals Tribunal, the Board of Review, and the chancery court did not consider the customer comment cards.[3] The Board of Review found that "comment cards are not a reliable form of hearsay and have limited credibility." It then affirmed its prior decision. The chancery court noted that the record reflects that the customer comment cards were considered by the administrative body, which then upheld its prior decision. The court also properly noted that uncorroborated hearsay cannot be the sole evidence of the employee's wrongful acts. *Green v. Neeley*, No. M2006-00481-COA-R3CV, 2007 WL 1731726, at *5 (Tenn. Ct. App. June 15, 2007).[4] Furthermore, the court cannot substitute its judgment for that of the administrative body "as to the weight of the evidence on questions of fact."[5] Tenn. Code Ann. § 50-7-304(i)(3). The comment cards were considered and found insufficient to alter the Board's decision. Demos' argument in this regard is without merit.

---

[3] From the record, it appears that the Appeals Tribunal was not involved in the reconsideration of the comment cards after the remand from the chancery court.

[4] Demos' argues that the cards were corroborated by Ruffin's failure to refute them. She testified that she did not remember the incidents and that she only knew of three comment cards about her. These statements do not corroborate the truthfulness of the allegations on the comment cards. Similarly, Demos' argument that Ruffin's testimony that she was fired because of the comment cards somehow corroborates the allegations in the comment cards is fallacious. Admitting she was fired because of the comment cards in no way validates the truthfulness of the allegations on the comment cards.

[5] The Board of Review stated that "[c]ustomer cards are not a reliable form of hearsay and have limited credibility." Then the Board said, "Some customers are unreasonable and can include blatant untruths with no recourse for the accused employee." Demos' attacks the Board's determination that the cards have limited credibility by arguing that there is no evidence that the customer cards offered by Demos' as evidence were untruthful. Of course, despite the fact that the cards were admitted into evidence without objection, there is no evidence that the customer cards were truthful either. No supervisor testified that he or she witnessed the incidents. This is why the chancery court referred to the cards as uncorroborated. Furthermore, "[c]ourts defer to the decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988). We decline to reverse the Board's decision based on this one statement.

Demos' also argues that the administrative bodies and the chancery court did not consider the personnel records. In the chancery court's earlier decision, it held that "the personnel records were admissible as a business record under the Rules of Evidence, as an exception to the general rule that hearsay evidence is excluded." Upon reconsideration, the Board of Review did not mention the personnel records as such, but did refer to "contemporaneous notes written by claimant's supervisor concerning reprimands." The Board also stated, "The evidence, including those previously-mentioned documents ruled admissible by the Chancellor, does not prove misconduct." Clearly, the Board was aware of the chancellor's decision and the personnel records. The records did not persuade the Board to rule in Demos' favor, and we cannot substitute our judgment for that of the Board "as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 50-7-304(i)(3). Demos' argument is without merit.

The record reflects that when the Board of Review reconsidered Ruffin's appeal after the chancery court remand, it did so in a meeting where 151 cases were decided in 125 minutes. Demos' maintains that this fact shows capriciousness "by definition." This court has defined the term "capricious" as describing something that "'shocks' the sense of justice and indicates a lack of fair and careful consideration." *Brown v. W. Elec. Co.*, C.A. No. 683, 1986 WL 11806, at *6 (Tenn. Ct. App. Oct. 24, 1986). In our opinion, mere evidence of rapid decision-making is not sufficient to overcome the long-established principle that state officials are presumed to do their duty. *See Cummings v. Beeler*, 223 S.W.2d 913, 916 (Tenn. 1949); *Rogers v. Jennings' Lessee*, 11 Tenn. 308, 309 (1832); *Byrd v. Bradley*, 913 S.W.2d 181, 183-84 (Tenn. Ct. App. 1995). The Board of Review is authorized to make its decision "on the basis of the evidence previously submitted in the case . . . ." Tenn. Code Ann. § 50-7-304(e)(1). The Board's decision reflects that the record was reviewed, and nothing in the appellate record contradicts this.

Finally, Demos' maintains that the Department's legal position is contrary to public policy because it requires service sector employers to subpoena customers to administrative proceedings. "The public policy of the state is to be found in its constitution, statutes, judicial decisions and applicable rules of the common law." *State ex rel. Swann v. Pack*, 527 S.W.2d 99, 112 n.17 (Tenn. 1975)) (citing *Home Beneficial Ass'n. v. White*, 177 S.W.2d 545, 546 (Tenn. 1944)), *cert. denied*, 424 U.S. 954 (1976); *see also Purkey v. Am. Home Assurance Co.*, 173 S.W.3d 703, 705 (Tenn. 2005). The employer has the burden of proving an employee's disqualification. *Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn. 1978). Thus, the employer must provide evidentiary support to justify the disqualification. That can be done through testimony or reliable documentary evidence. Demos' offered no eye-witness to Ruffin's alleged misconduct. Ruffin did not admit misconduct. The customer cards produced were hearsay. As this court has previously said:

> "Although hearsay is admissible in administrative hearings, uncorroborated hearsay does not constitute substantial and material evidence." *Estate of Milton v. Comm'r, Tenn. Dep't of Employment Sec.*, No. 03A01-9710-CH-00449, 1998 WL 282919, at *2 (Tenn. Ct. App. May 19, 1998). Thus, "hearsay testimony and documents may be used, if properly qualified for admission, to corroborate other testimony of the wrongful acts of the claimant, but not as the sole evidence of his or her wrongful

acts." *Johnson v. Neel*, No. 86-150-II, 1986 WL 14039, at *3 (Tenn. Ct. App. Dec. 12, 1986).

*Green*, 2007 WL 1731726, at *5. Hearsay has traditionally been viewed with skepticism in our legal system because it is unreliable and unchallengeable:

> By definition, hearsay involves an out-of-court statement used in court to prove the truth of the matter asserted in the out-of-court statement. The primary concern is that the trier of fact will not be able to hear cross-examination of the declarant, who made the out-of-court hearsay statement. In addition, the hearsay declarant's statement is presented to the trier of fact, but the declarant often is not present and therefore not subject to the oath to tell the truth. Another concern is that, since the trier of fact will not be able to observe the demeanor of the declarant, it will be difficult to assess the accuracy of the declarant's statement.

Neil P. Cohen et al., TENNESSEE LAW OF EVIDENCE § 8.01[3][a] (5th ed. 2005) (footnote omitted). Recognized exceptions to the ban on hearsay exist where the hearsay statements "bear sufficient indicia of reliability and trustworthiness to warrant admission." *State v. Henry,* 33 S.W.3d 797, 801 (Tenn. 2000).

Demos' problem is not the Department acting contrary to public policy. Rather, because hearsay cannot be the sole evidence of Ruffin's misconduct, Demos' failed to prove misconduct.

CONCLUSION

The chancery court is affirmed. Costs of appeal are assessed against Doji, Inc. d/b/a Demos' Steak and Spaghetti House, the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE